**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| COASTAL FEDERAL CREDIT UNION | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No.: 5:08-CV-00017-BR |
| v. | ) | |
| | ) | |
| LANDON TERRELL HARDIMAN, JR. | ) | |
| and DAFFNEY MARRITT HARDIMAN | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

**<u>APPEAL BRIEF FOR APPELLEE</u>**

Joshua Hillin
Attorney for Appellee
Law Offices of John T. Orcutt, P.C.
6616-2203 Six Forks Road
Raleigh, NC 27615
(919)847-9750
Fax (919)847-3439
NC State Bar No.: 28288

# TABLE OF CONTENTS

TABLE OF CASES...............................................................................................................i

TABLE OF STATUTES.........................................................................................................ii

ADDENDUM - STATUTES INVOLVED...............................................................................iii

STATEMENT OF THE BASIS OP APPELLATE JURISDICTION............................................1

STATEMENT OF ISSUE PRESENTED ON APPEAL.............................................................1

STANDARD OF REVIEW....................................................................................................2

STATEMENT OF THE CASE...............................................................................................3

ARGUMENTS

I.      THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT THE
        DEBTORS "ENTERED INTO" A REAFFIRMATION AGREEMENT WITH
        THE CREDITOR AS CALLED FOR UNDER 11 U.S.C. §521(a)(6) BY SIGNING
        FILING AND COMPLETING THE REAFFIRMATION AGREEMENT.......................5

II.     THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT WHEN
        A DEBTOR ENTERS INTO A REAFFIRMATION AGREEMENT PURSUANT
        TO §521(a)(6), AND A BANKRUPTCY COURT DISAPPROVES THE AGREEMENT,
        THAT §521(d) IS NO LONGER APPLICABLE, AND ANY BANKRUPTCY
        DEFAULT CLAUSE IS NO LONGER AVAILABLE....................................................11

        A.      Plain Language of the statutes dictates that "ipso facto" clauses will only be
                enforceable when the debtor fails to timely take action under §521(a)(6) or
                §362(h)(1)-(2)......................................................................................................11

        B.      The role of Bankruptcy Court Judges in hearings under §524(c)(6) is to act as
                gatekeepers in protecting a debtor's "fresh start" and carry out Congress' intent to
                extend protection to consumer debtors.................................................................12

CONCLUSION...................................................................................................................15

## TABLE OF CASES

In re Belanger, 962, F.2d 345 (4th Cir. 1992)

In re Blakeley, 363 B.R. 225 (Bankr.D. Utah 2007)

In re Chim, 2008 WL 228143(Bankr.D.Md. 2008)

In re Donald, 343 B.R. 524 (Bankr.E.D.N.C. 2006)

In re Efird, Case No. 06-00216-5-ATS (Bankr.E.D.N.C. June 21, 2006)

In re Hinson, 352 B.R. 48, 51 (Bankr.E.D.N.C., 2006)

In re Husain, 364 B.R. 211 (Bankr.E.D. Va. 2007)

In re Laynas, 345 B.R. 505, 514 ( Bankr.E.D.Pa., 2006)

In re Moustafi, 371 B.R. 434 (Bankr.D.Ariz.,2007)

In re Quintero, No 06-40163, 2006 WL 1351623 (Bankr.N.D.Cal. May 17, 2006)

 In re Sibert. 2007 WL 4365347 (Bankr.D.Md.  2007)

In re Spradlin, 231 B.R. 254,260 (Bankr E.D. Mich. 1999)

In re Stevens, 365 B.R. 610, 612 (Bankr.E.D.Va.,2007)

Lamie v. U.S. Trustee, 540 U.S. 526, 533 (2004)

Marrama v. Citizens Bank of Massachusetts, 127 S.Ct. 1105 (2007)

Price v. Delaware State Police Federal Credit Union (In re Price), 370 F.3d 362, 372 (3d Cir. 2004), 491 U.S. 440 (1989)

Public Citizen v. Dept of Justice, 491 U.S. 440 (1989)

# TABLE OF STATUTES

**Federal Statutes:**

11 U.S.C. § 362(h)

11 U.S.C. § 521(a)(2)

11 U.S.C. § 521(a)(6)

11 U.S.C. § 521(d)(1)

11 U.S.C. § 524(c)(4)

11 U.S.C. § 524(c)(6)

11 U.S.C. § 524(k)

11 U.S.C. § 524(m)

**Federal Rules:**

Rule 4004(a), Federal Rules of Bankruptcy Procedure

Rule 4004(c)(1), Federal Rules of Bankruptcy Procedure

# ADDENDUM - STATUTES INVOLVED

## § 362. Automatic stay--

**(h)**

> **(1)** In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--
>
> > **(A)** to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and
> >
> > **(B)** to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.
>
> **(2)** Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

## § 521. Debtor's duties

**(a)** The debtor shall--

> **(2)** if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--
>
> > **(A)** within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such

additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

**(B)** within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

**(c)** nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h);

**(6)** in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either--

**(A)** enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or

**(B)** redeems such property from the security interest pursuant to section 722; and

**(d)** If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property which a lessor or bailor owns and has leased, rented, or bailed to the debtor or as to which a creditor holds a security interest not otherwise voidable under section 522(f),544,545,547,548 or 549, nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor. Nothing in this subsection shall be deemed to justify limiting such a provision in any other circumstance.

## § 524. Effect of discharge

**(c)** An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargable in a case under this title is enforceable only to any extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if--

**(1)** such agreement was made before the granting of the discharge under section 727,1141,1228, or 1328 of this title;

iv

**(2)** the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;

**(3)** such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--

    **(A)** such agreement represents a fully informed and voluntary agreement by the debtor;

    **(B)** such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and

    **(c)** the attorney fully advised the debtor of the legal effect and consequences of--

        **(I)** an agreement of the kind specified in this subsection; and

        **(ii)** any default under such an agreement;

**(4)** the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

**(5)** the provisions of subsection (d) of this section have been complied with; and

**(6)(A)** in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

    **(i)** not imposing an undue hardship on the debtor or a dependent of the debtor; and

    **(ii)** in the best interest of the debtor.

    **(B)** Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

**k)**

**(1)** The disclosures required under subsection (c)(2) shall consist of the disclosure statement described in paragraph (3), completed as required in that paragraph, together with the agreement specified in subsection (c), statement, declaration, motion and order described, respectively, in paragraphs (4) through (8), and shall be the only disclosures required in connection with entering into such agreement.

**(2)** Disclosures made under paragraph (1) shall be made clearly and conspicuously and in writing. The terms "Amount Reaffirmed" and "Annual Percentage Rate" shall be disclosed more conspicuously than other terms, data or information provided in connection with this

v

disclosure, except that the phrases "Before agreeing to reaffirm a debt, review these important disclosures" and "Summary of Reaffirmation Agreement" may be equally conspicuous. Disclosures may be made in a different order and may use terminology different from that set forth in paragraphs (2) through (8), except that the terms "Amount Reaffirmed" and "Annual Percentage Rate" must be used where indicated.

**(3)** The disclosure statement required under this paragraph shall consist of the following:

**(A)** The statement: "Part A: Before agreeing to reaffirm a debt, review these important disclosures:";

**(B)** Under the heading "Summary of Reaffirmation Agreement", the statement: "This Summary is made pursuant to the requirements of the Bankruptcy Code";

**(C)** The "Amount Reaffirmed", using that term, which shall be--

**(I)** the total amount of debt that the debtor agrees to reaffirm by entering into an agreement of the kind specified in subsection (c), and

**(ii)** the total of any fees and costs accrued as of the date of the disclosure statement, related to such total amount.

**(D)** In conjunction with the disclosure of the "Amount Reaffirmed", the statements--

**(I)** "The amount of debt you have agreed to reaffirm"; and

**(ii)** "Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement."

**(E)** The "Annual Percentage Rate", using that term, which shall be disclosed as--

**(I)** if, at the time the petition is filed, the debt is an extension of credit under an open end credit plan, as the terms "credit" and "open end credit plan" are defined in section 103 of the Truth in Lending Act, then--

**(I)** the annual percentage rate determined under paragraphs (5) and (6) of section 127(b) of the Truth in Lending Act, as applicable, as disclosed to the debtor in the most recent periodic statement prior to entering into an agreement of the kind specified in subsection (c) or, if no such periodic statement has been given to the debtor during the prior 6 months, the annual percentage rate as it would have been so disclosed at the time the disclosure statement is given to the debtor, or to the extent this annual percentage rate is not readily available or not applicable, then

**(II)** the simple interest rate applicable to the amount reaffirmed as of the date the disclosure statement is given to the debtor, or if different simple interest rates apply to different balances, the simple interest rate applicable to each such

balance, identifying the amount of each such balance included in the amount reaffirmed, or

**(III)** if the entity making the disclosure elects, to disclose the annual percentage rate under subclause (I) and the simple interest rate under subclause (II); or

**(ii)** if, at the time the petition is filed, the debt is an extension of credit other than under an open end credit plan, as the terms "credit" and "open end credit plan" are defined in section 103 of the Truth in Lending Act, then--

**(I)** the annual percentage rate under section 128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to the entering into an agreement of the kind specified in subsection (c) with respect to the debt, or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed at the time the disclosure statement is given to the debtor, or to the extent this annual percentage rate is not readily available or not applicable, then

**(II)** the simple interest rate applicable to the amount reaffirmed as of the date the disclosure statement is given to the debtor, or if different simple interest rates apply to different balances, the simple interest rate applicable to each such balance, identifying the amount of such balance included in the amount reaffirmed, or

**(III)** if the entity making the disclosure elects, to disclose the annual percentage rate under (I) and the simple interest rate under (II).

**(F)** If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act, by stating "The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower."

**(G)** If the debt is secured by a security interest which has not been waived in whole or in part or determined to be void by a final order of the court at the time of the disclosure, by disclosing that a security interest or lien in goods or property is asserted over some or all of the debts the debtor is reaffirming and listing the items and their original purchase price that are subject to the asserted security interest, or if not a purchase-money security interest then listing by items or types and the original amount of the loan.

**(H)** At the election of the creditor, a statement of the repayment schedule using 1 or a combination of the following--

**(I)** by making the statement: "Your first payment in the amount of $___ is due on ___ but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.", and stating the amount of the first payment and the due date of that payment in the places provided;

**(ii)** by making the statement: "Your payment schedule will be:", and describing the repayment schedule with the number, amount, and due dates or period of payments scheduled to repay the debts reaffirmed to the extent then known by the disclosing party; or

**(iii)** by describing the debtor's repayment obligations with reasonable specificity to the extent then known by the disclosing party.

**(I)** The following statement: "Note: When this disclosure refers to what a creditor 'may' do, it does not use the word 'may' to give the creditor specific permission. The word 'may' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held."

**(J)**

**(I)** The following additional statements:

"Reaffirming a debt is a serious financial decision. The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

"1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

"2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

"3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

"4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

"5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

"6. If you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court

viii

unless the reaffirmation is presumed to be an undue hardship as explained in Part D.

"7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

"Your right to rescind (cancel) your reaffirmation agreement. You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

"What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

"Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

"What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A 'lien' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court."

**(ii)** In the case of a reaffirmation under subsection (m)(2), numbered paragraph 6 in the disclosures required by clause (I) of this subparagraph shall read as follows:

ix

"6. If you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court."

**(4)** The form of such agreement required under this paragraph shall consist of the following:

"Part B: Reaffirmation Agreement. I (we) agree to reaffirm the debts arising under the credit agreement described below.

"Brief description of credit agreement:

"Description of any changes to the credit agreement made as part of this reaffirmation agreement:

"Signature: Date:

"Borrower:

"Co-borrower, if also reaffirming these debts:

"Accepted by creditor:

"Date of creditor acceptance:".

**(5)** The declaration shall consist of the following:

  **(A)** The following certification:

  "Part C: Certification by Debtor's Attorney (If Any).

  "I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

  "Signature of Debtor's Attorney: Date:".

  **(B)** If a presumption of undue hardship has been established with respect to such agreement, such certification shall state that in the opinion of the attorney, the debtor is able to make the payment.

  **(C)** In the case of a reaffirmation agreement under subsection (m)(2), subparagraph (B) is not applicable.

x

**(6)**

**(A)** The statement in support of such agreement, which the debtor shall sign and date prior to filing with the court, shall consist of the following:

"Part D: Debtor's Statement in Support of Reaffirmation Agreement.

"1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $___, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $___, leaving $___ to make the required payments on this reaffirmed debt. I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: ___.

"2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement."

**(B)** Where the debtor is represented by an attorney and is reaffirming a debt owed to a creditor defined in section 19(b)(1)(A)(iv) of the Federal Reserve Act, the statement of support of the reaffirmation agreement, which the debtor shall sign and date prior to filing with the court, shall consist of the following:

"I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement."

**(7)** The motion that may be used if approval of such agreement by the court is required in order for it to be effective, shall be signed and dated by the movant and shall consist of the following:

"Part E: Motion for Court Approval (To be completed only if the debtor is not represented by an attorney.). I (we), the debtor(s), affirm the following to be true and correct:

"I am not represented by an attorney in connection with this reaffirmation agreement.

"I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of this reaffirmation agreement, and because (provide any additional relevant reasons the court should consider):

"Therefore, I ask the court for an order approving this reaffirmation agreement."

**(8)** The court order, which may be used to approve such agreement, shall consist of the following:

"Court Order: The court grants the debtor's motion and approves the reaffirmation agreement described above."

**(m)**

**(1)** Until 60 days after an agreement of the kind specified in subsection (c) is filed with the court (or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period), it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt. This presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement. No agreement shall be disapproved without notice and a hearing to the debtor and creditor, and such hearing shall be concluded before the entry of the debtor's discharge.

**(2)** This subsection does not apply to reaffirmation agreements where the creditor is a credit union, as defined in section 19(b)(1)(A)(iv) of the Federal Reserve Act.

**Federal Rules of Bankruptcy Procedure**

**Rule 4004. Grant or Denial of Discharge**

(a) Time for filing complaint objecting to discharge; notice of time fixed

In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). In a chapter 11 reorganization case, the complaint shall be filed no later than the first date set for the hearing on confirmation. At least 25 days' notice of the time so fixed shall be given to the United States trustee and all creditors as provided in Rule 2002(f) and (k), and to the trustee and the trustee's attorney.

(c) Grant of discharge

**(1)** In a chapter 7 case, on expiration of the time fixed for filing a complaint objecting to discharge and the time fixed for filing a motion to dismiss the case under Rule 1017(e), the court shall forthwith grant the discharge unless ...

**STATEMENT OF APPELLATE JURISDICTION**

This case is before the Court on an appeal by Coastal Federal Credit Union (hereinafter "the Appellant") from a final order of the united States Bankruptcy court for the Eastern District of North Carolina (the "Bankruptcy Court") entered on November 20, 2007, in In re Landon Terrell Hardiman, Jr. And Daffney Merritt Hardiman, Case No. 07-00954-5-ATS. United States District Courts have appellate jurisdiction over final judgments, orders and decrees entered by the bankruptcy courts pursuant to 28 U.S.C. §158(a)(1). The order appealed from fully disposes of the Appellant's motion for reconsideration by the Bankruptcy Court of its order entered August 15, 2007 disapproving the reaffirmation agreement signed by the Debtors and the Appellant relative to the Debtors' 2005 Chevrolet Equinox financed with the Appellant . Thus the order on appeal in this case is final and appealable to this Court.

**ISSUES ON APPEAL**

1. Did the Bankruptcy Court err in determining that the Debtors "entered into" a reaffirmation agreement with the Appellant as called for under 11 U.S.C. §521(a)(6) notwithstanding that the Bankruptcy Court subsequently disapproved the reaffirmation agreement in question at a hearing called for under 11 U.S.C. § 524(c)(6)?

2. Did the Bankruptcy Court err in determining that the provisions of new 11 U.S.C. § 521(d) removing any federal bankruptcy law limitation on enforcement of "ipso facto clause" are not available to a secured creditor such as the Appellant when a reaffirmation agreement

1

is signed by the debtor but then disapproved by the Bankruptcy Court?

## STANDARD OF REVIEW

On appeal, the district court may affirm, remand with instructions for further proceedings, or reverse the decision of the bankruptcy court. A bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 859 (4th Cir. 2001). Conclusions of law are reviewed *de novo*. In re Apex Express Corp., 190 F.3d 624, 630 (4th Cir. 1999); In re Midway Airlines Corp., 283 B.R. 846, 849 (E.D.N.C. 2002). *See also* Rule 8013, Federal Rules of Bankruptcy Procedure (setting forth standard of review for findings of fact). "A finding of fact is clearly erroneous when it is (1) not supported by substantial evidence; (2) contrary to the clear preponderance of the evidence; or (3) based on an erroneous view of the law." In re Environmental Aspects, Inc., 235 B.R. 378, 383-384 (E.D.N.C. 1999), *quoting* In re Cheatham, 91 B.R. 377, 378 (E.D.N.C. 1988). A bankruptcy court necessarily abuses its discretion if its decision is based on an erroneous view of the law or clearly erroneous factual findings. In re Reinertson, 241 B.R. 451, 454 (Bankr. 9th Cir.BAP 1999), *citing* Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 405 (1990).

2

## STATEMENT OF THE CASE

1.      On or about February 21, 2005, Landon T. Hardiman, Jr. And Daffney M. Hardiman

(herein the "Debtors") purchased a 2005 Chevrolet Equinox (herein the "vehicle") pursuant to

the terms of an installment sales contract (herein collectively the "Contract"). The Contract was

later assigned to Coastal Federal (herein the "Creditor").

2.      The Debtors filed a Chapter 7 Bankruptcy case on May 2, 2007. As part of this petition the

Debtors filed a Schedule I listing the current monthly income of debtors as approximately

$4,454.93 and a Schedule J listing projected monthly expenses of the Debtors, including the debt

to Coastal Federal, as approximately $5,689.

3.      In connection with this petition, the Debtors filed a Statement of Intention acknowledging

that they intended to reaffirm the debt to the Creditor secured by the Vehicle.

4.      On or about June 11, 2007, counsel for the Creditor forwarded a reaffirmation agreement

to counsel for the Debtors. The agreement provided the same terms as the parties' original

agreement as set forth in the Contract.

5.      The Debtors then completed and signed said Reaffirmation Agreement. Part D of this

agreement showed that the Debtors had sufficient income, after their monthly expenses were

deducted, to afford payments under the Reaffirmation Agreement.

6.      The Reaffirmation Agreement was then filed with the Bankruptcy Court. Counsel for the

Debtors did not sign and file an affidavit on behalf of the Debtors, and thereby counsel for debtor

did not state that he found the Reaffirmation Agreement to be in the best interest of the Debtors.

7.      Accordingly, a hearing was scheduled for the Bankruptcy Court to determine if the

Reaffirmation Agreement was in the Debtors' best interest.  Generally, these hearings are also held to rebut a presumption that the agreement is an undue hardship on the debtor, however, because the Creditor is a credit union, this provision was not applicable.

8.     At the hearing on the Reaffirmation Agreement, the Debtors stated, as noted in the Order Regarding Reaffirmation Agreement, that the Debtors were, at that time, current with their vehicle payments, and that they should be able to remain so, but that it may be difficult during some months for them to maintain these payments.  The Debtors also stated that at that time, the vehicle was worth substantially less than the balance owed, that the being the amount being requested to be reaffirmed.

9.     Taking all of these facts into consideration, the Bankruptcy Court did not approve the Reaffirmation Agreement, acknowledging that this disapproval was through no fault of the Debtors, and entered an order to that effect on August 15, 2007.

10.    The Creditor thereafter filed a motion to reconsider such order.

11.    A hearing was held on the Creditor's motion for reconsideration on October 31, 2007, at which time counsel for both parties appeared and presented their respective client's arguments. At the conclusion of such hearing, the Bankruptcy Court took the matter under advisement and on November 20, 2007, entered an order denying the Creditor's motion, which order is subject of the Creditor's appeal.

4

**ARGUMENT**

I.   THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT THE DEBTORS "ENTERED INTO" A REAFFIRMATION AGREEMENT WITH THE CREDITOR AS CALLED FOR UNDER 11 U.S.C. §521(a)(6) BY SIGNING, FILING, AND COMPLETING THE REAFFIRMATION AGREEMENT, NOT BY OBTAINING COURT APPROVAL.

The Supreme Court has stated that "[w]hen the statute's language is plain, the court's sole function - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 533 (2004).  A disposition will only be found absurd if it is unthinkable, bizarre or demonstrably at odds with the drafters intent.  *See* In re Spradlin, 231 B.R. 254,260 (Bankr E.D. Mich. 1999), *citing* Public Citizen v. Dept of Justice, 491 U.S. 440 (1989).  A plain reading of the applicable statutes make it clear that Congress intended to limit the meaning of "entered into" a reaffirmation agreement to include completion, signing and filing of such agreement, not obtaining court approval.  The Creditor asserts that entering into includes obtaining court approval.  The Debtors contend that the overreaching meaning the Creditor has put forward is both not supported by the plain language of the statute and is actually physically impossible.

Under the amendments made by BAPCPA, Congress has set a well marked path for Debtors who intend to reaffirm a debt.  §521(a)(2)(A) requires that within thirty days from the filing of a petition, the debtor must file a statement of intentions indicating the debtor intends to reaffirm such debt.  If the debtor fails to do so, the automatic stay terminates with respect to such property under §362(h)(1).  §521(a)(2)(B) then requires the debtor to perform this intention within thirty days of the first date set for the 341 meeting, or again, the stay will terminate in

5

respect to such property under §362(h)(1). §521(a)(6) then states that the automatic stay shall lift with respect to personal property for which a creditor has an allowed secured claim, if the debtor fails to "enter into an agreement with the creditor pursuant to section § 524(c)" within forty five days of the first date set for meeting of creditors.

§524(c) sets out six factors that determine whether the Reaffirmation Agreement is enforceable, not whether such agreement has been entered. If a debtor fails to enter into an agreement in the 45 days as stated by §521(a)(6), then §521(d) states that the Bankruptcy Code does nothing to prevent or limit the enforceability of any default clauses in the creditor's contract.

Appellant contends that an essential part of the process for a debtor to enter into an agreement under of §521(a)(6), is to complete all parts of §524(c), especially the provision requiring court approval . It appears the crux of the Appellant's argument is that when the provision states "pursuant to §524(c)," this provision encompasses *all* of §524(c). Thus a Reaffirmation Agreement cannot be entered into, unless each subsection of §524(c) is completed. In other words, it is the Appellant's assertion that a debtor must enter into an enforceable reaffirmation agreement. This interpretation is at odds with a continuously growing line of cases. In addition, when *all* of §524(c) is examined, it will be discovered that the Appellant's argument is a physical impossibility.

A number of courts have analyzed these sections and their interplay, and a decisive majority have come to the conclusion that the §521(a)(6) requirement of entering into a Reaffirmation Agreement is a completely separate issue from the enforceability or court approval of such agreement. One of this first cases to make this distinction was <u>In Re Donald</u> , 373 B.R.

524 (Bankr.E.D.N.C. 2006).  The Honorable Judge  A. Thomas Small arrived at the conclusion that "§524(c) sets forth the requirements that must be met for a reaffirmation agreement to be enforceable.  Several of those requirements do not involve the debtor, and whether or not an agreement is enforceable may often be beyond the debtor's control."  Id. at 540.  This distinction between the debtor's performance requirements and the enforceability of the agreement is the pivotal distinction that a number of later cases highlight on, beginning with In Re Husain, 364 B.R. 211 (Bankr.E.D.Va.,2007).

In Husain, as in most cases that are referenced, the Court was looking at a factual situation that is substantially similar to the case at hand.  The debtor filed Chapter 7, filed a statement of intention to reaffirm a secured debt, then completed, signed and filed the Reaffirmation Agreement.  The Husain Court made the same distinction the Court in Donald made, and then took it one step further.  "Performance requirements should not be read as a mandate for debtors to entirely consummate their stated intentions . . . 521(a) of the Bankruptcy Code merely requires a debtor to 'take steps to act on an intention.'" Husain at 218, citing In re Hinson 352 B.R.48, Price v. Delaware State Police Federal Credit Union (In re Price), 370 F.3d 362, 372 (3d Cir. 2004), 491 U.S. 440 (1989).  The Court then went on to state "whether the Reaffirmation Agreements should be disapproved or deemed enforceable is an issue that is separate and distinct from the issue of whether the Debtors' act of entering into those Agreements satisfied the 'performance' requirements of §521(a) of the Bankruptcy Code."  The Husain Court revisited this issue shortly after its decision and came to the same conclusion.  In re Stevens followed the Husain holding, reiterating that "whether or not the Reaffirmation Agreement should be approved is separate and distinct from the 'performance' requirements of

7

§362(h) and §521(a) of the Bankruptcy Code." In re Stevens, 365 B.R. 610, 612

(Bankr.E.D.Va.,2007)

The Husain and Stevens cases were followed by In re Moustafi, 371 B.R. 434

(Bankr.D.Ariz.,2007). The Court in Moustafi cited Husain and concurred in their interpretation

of §521(a)(6). Moustafi clearly made a distinction between a debtor's failure "to timely enter

into a reaffirmation agreement" and "the court's disapproval of the agreement or by its

determination that the agreement is unenforceable." Id. at 438. Moustafi left no doubt of this

difference when it stated "[i]t is not necessary for the Court to approve the reaffirmation

agreement in order for the Debtor to comply with §521 or §362(h)." Id. citing In re Blakeley, 363

B.R. 225, 232 (Bankr.D.Utah 2007).

This same distinction was followed quite recently by Bankruptcy Courts in Sibert and

Chim. In re Sibert, 2007 WL 4365347 (Bankr.D.Md.), In re Chim, 2008 WL

228143(Bankr.D.Md. 2008). Sibert, citing Donald, clearly states that a Debtor can enter into a

Reaffirmation Agreement, even if the Court disapproves such agreement. Sibert. at 3.

Appellant makes the long jump by equating a Reaffirmation Agreement to a binding

contract. Aside from points made above, it is unambiguous that this leap is not the proper

interpretation. "Reaffirmation Agreement" is simply the title of a type of document. Just

because the word agreement is in the title, it does not mean that it must be a valid contract. A

Reaffirmation Agreement is a Reaffirmation Agreement before any parties sign. Throughout the

code, and specifically §524, the document is referred to as a "Reaffirmation Agreement" before it

has become enforceable by meeting all subsections of §524(c). In fact, the Appellant's brief

refers to the document as a "Reaffirmation Agreement" in at least five occasions in the statement

of the case, despite the fact it was never approved by the Court, and thus never became an enforceable agreement.

Despite the fact the majority of courts have made the distinction between the debtor's performance requirements when entering into an agreement versus obtaining court approval, there is an additional reason why Appellant's interpretation is incorrect. Again, the appellant contends that because of the phrase in §521(a)(6) "pursuant to 524(c)," that it is a requirement that all parts of 524(c) are complied with for a debtor to enter into such Reaffirmation Agreement. Appellant is obviously trying to draw the Court to §524(c)(6), which requires the Court's approval of any Reaffirmation Agreement in a case where the negotiation of such agreement was not done with the representation of counsel. Appellant wishes to join these two provisions as one, or incorporate §524(c)(6) into 521(a)(6) in obvious contradiction to many court's interpretations. Despite going against a majority of rulings, this argument fails in another respect.

Appellant states that the plain meaning incorporates all of §524(c) into §521(a)(6) yet in arriving at subsection six of this provision Appellant has conveniently skipped over subsection four. If the Appellant uses its own argument and incorporates all subsections, the Court arrives at an absurd result. 521(a)(6) requires that unless the debtor enters into a Reaffirmation Agreement within forty five days of the first meeting of creditors, then the automatic stay terminates. If we follow Appellant's interpretation that all subsections of §524(c) must be completed to enter into an agreement, then unless each subsection is completed within forty five days of the first set 341 meeting, the stay shall lift. §524(c)(4) states that the debtor cannot have rescinded such agreement by the discharge, or sixty days after the agreement is filed, whichever

9

is later. Under either scenario, whether the sixty day time period runs first or the discharge occurs first, it is not possible to know for sure whether the debtor will rescind and therefore comply with §524(c)(4) until, at the earliest, the discharge date.

The question is then, what is the earliest a case can be discharged. Bankruptcy Rule 4004(c) states that a discharge cannot be entered until the time for objecting to discharge expires. Rule 4004(a) states that the deadline for objecting to discharge is sixty days after the first set meeting of creditors. Returning to §521(a)(6), if all of §524(c) must occur within forty five days of the first set meeting of creditors, and §524(c)(4) cannot occur with certainty until sixty days after the first date set for the meeting of creditors, then the Appellant's interpretation is impossible. It is difficult to believe that Congress intended an impossible result.

Using this case as an example will better illustrate this point. The debtor filed their petition on May 2, 2007. The first set meeting of creditors was May 30, 2007. §521(a)(6) requires that a debtor "enter into" a reaffirmation agreement within forty five days of the first set 341 meeting, in this case that deadline is July 14, 2007. Bankruptcy Rule 4004(a) states the deadline for objection to discharge is sixty days after the first set 341 meeting, in this case July, 29, 2007. Bankruptcy Rule 4004(c) states that a discharge cannot be entered until the deadline in 4004(a) passes, therefore discharge cannot occur until July 29 at the earliest. §524(c)(4) states that a debtor must not have rescinded their agreement prior to discharge for it to be enforceable, here prior to July 29. Appellant's argument is that *all* of §524(c), which must include §524(c)(4), is a requirement of §521(a)(6). Therefore, if the Appellant's argument is followed to its logical conclusion, then it is arguing that, which cannot have occurred prior to July 29, 2007 (knowing that the agreement was not rescinded), must occur by July 14, 2007. This cannot happen.

10

II.     THE BANKRUPTCY COURT CORRECTLY DETERMINED THAT WHEN A
        DEBTOR ENTERS INTO A REAFFIRMATION AGREEMENT PURSUANT TO
        §521(a)(6), AND A BANKRUPTCY COURT DISAPPROVES THE AGREEMENT,
        THAT §521(d) IS NO LONGER APPLICABLE, AND ANY BANKRUPTCY
        DEFAULT CLAUSE IS NO LONGER AVAILABLE.

        A.  Plain Language of the statutes dictates that "ipso facto" clauses will only be

enforceable when the debtor fails to timely take action under §521(a)(6) or §362(h)(1)-(2).  Prior

to the enactment of BAPCPA, the Fourth Circuit was what is commonly known as a "ride

through" circuit.   *See* In re Belanger 962 F.2d 345 (4th Cir. 1992).   Basically this meant that as

long as a Chapter 7 debtor remained current on payments and kept the collateral properly insured,

the debtor could keep the collateral without reaffirming the debt.  Bankruptcy default clauses,

often referred to as "ipso facto" clauses, were made unenforceable as a matter of law. Id. at 348.

BAPCPA made an obvious addition to this general rule by including the provision §521(d).  This

provision allows a creditor to invoke such clauses in two certain circumstances.  The first is

when a debtor fails to take timely action under §521(a).  As discussed above, this occurs when a

debtor fails to enter into a reaffirmation agreement within forty five days of the 341 meeting.

The second instance in which a creditor may enforce such bankruptcy default clause (if present in

the contract of course), is if the debtor fails to timely act under §362(h)(1) and (2).  These

provisions require the debtor to timely file a statement of intentions, and then timely act on such

intention.  If the debtor acts as required under these provisions, then all parties are in the same

situation they were in prior to BAPCPA.  As the Court in Stevens holds, "[a]s the Debtor has

done everything in her capacity to comply with the requirements of § 362(h) and §521(a) of the

Bankruptcy Code, §521(d) of the Bankruptcy Code is inapplicable."  Stevens, 365 B.R. at 612.

11

In instances as are present in this case, where a debtor timely files a statement of intentions and timely signing the reaffirmation agreement, §521(d) never comes into play. When a debtor complies with the relevant provisions of §362(h) and §521, the stay remains in place, the property remains part of the bankruptcy estate, and the creditor may not exercise any ipso facto clauses. <u>Chim</u>, 2008 WL 228143 at 4, <u>In re Efird</u>, Case No. 06-00216-5-ATS, (Bankr. E.D.N.C. June 21, 2006).

BAPCPA did not completely eliminate the "ride through," it merely created limitations. The Honorable Judge Leonard described appropriately when he stated, "BAPCPA carved out an exception to this rule adding §521(d), in order for an "ipso facto" clause to be made operative, the debtor must have failed to have timely take action under §521(a)(6) or §362(h)(1)-(2)." <u>In re Hinson</u>, 352 B.R. 48, 51 (Bankr.E.D.N.C., 2006).

For a substantial portion of cases, debtors will fall into this carved out exception and the BAPCPA amendments will result in a vast change. Those cases will be where the Court has found that the reaffirmation agreement is in the debtor's best interest and it does not result in an undue hardship (in cases where the secured creditor is not a credit union). Since BAPCPA enactment, a large number of agreements have been signed off by attorneys and many have been approved by the Bankruptcy Courts. What is of concern for this Court are those cases that do not fall within this exception, those cases where a Bankruptcy Court has conducted a hearing and found that the reaffirmation agreement is not in the debtor's best interest.

B. <u>The role of Bankruptcy Court Judges in hearings under §524(c)(6) is to act as gatekeepers in protecting a debtor's "fresh start" and carry out Congress' intent to extend protection to consumer debtors.</u> The Bankruptcy Court's decision allows Judges to take a

12

"gatekeeper" role and further Congress' intent to provide a higher measure of protection for consumers and preserve the "fresh start" bankruptcy was intended to give. As the Supreme Court has stated on numerous occasions, the "fresh start" is the principal objective of the Bankruptcy Code. <u>Marrama v. Citizens Bank of Massachusetts</u>, 127 S.Ct. 1105 (2007). This aim of Congress is obvious from the plain language of §524(c)(6). This subsection mandates judicial review of all reaffirmation agreements where an attorney has not represented a debtor in the negotiation of, and even they are represented, the code still requires court approval when Part D of the Reaffirmation Agreement shows the debtor cannot afford the debt. "It is not surprising that Congress would look to the courts to protect the debtor's rights in the reaffirmation process." <u>In re Laynas</u>, 345 B.R. 505, 514 ( Bankr.E.D.Pa., 2006). "Judicial review of reaffirmation agreements has been described as an 'excellent preventive measure against unwise reaffirmation of debts that may impair debtors' fresh start.'" *See* <u>Laynas</u> at 514 *citing* <u>In re Vargas</u>, 27 B.R. 157,166.

Prior to BAPCPA, in this district, reaffirmation agreements were a rarity. With the "ride through" in place, there was only a few occasions where a reaffirmation was of any benefit to the debtor. More often, the benefit of not having any personal liability, would outweigh any slight benefit the reaffirmation agreement offers. Obviously, BAPCPA has ended those days. But it is just as obvious that Congress did not intend to create a system where by debtors would have to undertake an undue hardship or for debtors whom a reaffirmation would not be in their best interest would be forced to do so. Congress created a middle ground where some debtors would reaffirm, and others would not, a system where the decision was subject to judicial review.

This review is not a rubber stamp and by no means revives the "ride through" as it existed

13

prior to BAPCPA. This review is a case by case analysis to decide whether the reaffirmation is in the debtors best interest and whether it imposes an undue hardship, both factors key to preserving the debtor's fresh start. The latter is so important that in many cases, there is a presumption that the debt is an undue hardship. Although not applicable in this case because the creditor is a credit union, §524(m) provides that should the debtors statement in connection with subsection (k)(6)(A) show more monthly expenses than income, there is a presumption that the debt is undue hardship. This presumption can be rebutted, but it is subject to judicial review.

Appellant argues that Congress intended to eliminate the "ride through" for all debtors. This presumed intent is not clear. As discussed above, the plain language only shows that Congress intended debtors to do everything in their capacity to reaffirm. It is difficult to contemplate that Congress would require any further acts of which the debtor has no control. In a situation as such where there is ambiguity in the intent, "[t]here is no reason for this court to reach beyond the plain language of the statute to implement some presumed Congressional intent to completely eliminate ride-through when the unambiguous language of §521(a)(2) and (a)(6) limit BAPCPA's anti-ride-through provision to debtors who fall within the purview of §362(h) and 521(d)." Moustafi, 371 B.R. at 439. If Congress had intended to completely eliminate "ride through," it could have easily done so by changing the words from §521(a)(6) from "enters into" to "obtains court approval." *See* Id. *citing* Blakeley, 363 B.R. at 232.

Congress' intent to protect consumers does not end with judicial review. It is furthered by the exhaustive disclosure requirements added by §524(k). "The addition of section §524(k) into the Bankruptcy Code is considered one of the primary protections that Congress afforded to chapter 7 debtors when it enacted BAPCPA." Husain, 364 B.R. at 215 *citing* In re Quintero, No

14

06-40163, 2006 WL 1351623 (Bankr.N.D.Cal. May 17, 2006).

## CONCLUSION

The plain language of the statutes are clear and the majority of the courts analyzing this issue have concurred.  When Congress wrote "enters into an agreement with the creditor pursuant to section 524(c)," they only meant a debtor must take action in their control to reaffirm.  As the majority of courts have found, there is a clear distinction between entering into an agreement and obtaining court approval.  If congress had intended court approval as a requirement, they would have written that into §521(a)(6).  Furthermore, it is evident that Congress did not intend to completely eliminate "ride-through."  The plain language clearly states that "ipso facto" clauses will only be available if the debtor fails to timely take action required under §521(a)(6) or §362(h)(1)-(2).  Accordingly, the decision of the Bankruptcy Court should be affirmed.

# CERTIFICATE OF SERVICE

I, Joshua Hillin, of the Law Offices of John T. Orcutt, P.C., do hereby certify
under penalty of perjury that I am, and at all times hereinafter mentioned was, more than eighteen
(18) years of age; and that on this day, I served copies of the foregoing Brief of Appellee, by
regular U.S. mail, first-class postage pre-paid, upon the parties set forth below (including
addresses):


Pamela P. Keenan
Attorney for Appellant
Post Office Box 19766
Raleigh, NC 27619

John F. Logan
Chapter 13 Trustee
P. O. Box 61039
Raleigh, NC 27661-1039


It is under penalty of perjury that I certify the foregoing to be true and correct.

DATE: February 13, 2008



 s./ Joshua Hillin
Joshua Hillin
Attorney for Appellee
6616-203 Six Forks Road
Raleigh, NC 27615
Telephone: (919) 847-9750
Facsimile: (919) 847-3439
NC State Bar No.: 28288

16